UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARBARA LYNN BOYD,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration<br><br>　　　　　Defendant. | Case No. C10-5756-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

Barbara Lynn Boyd appeals the final decision of the Commissioner of the Social Security Administration which denied her applications for Disability Insurance Benefits. Ms. Boyd contends that the administrative law judge ("ALJ") erred by: (1) rejecting her credibility; (2) failing to properly consider limitations from her fibromyalgia and pain disorder; and (3) improperly relying on the vocational expert's ("VE") testimony. Dkt. 19. For the reasons set forth below, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Boyd is 55 years old, and has completed two years of college. Tr. 82, 98. Her past work experience includes employment as a licensed pharmacy technician. Tr. 104. On January

REPORT AND RECOMMENDATION - 1

20, 2006, she applied for benefits, alleging disability as of May 20, 2004.  Tr. 82-84.  Her claim was denied initially and on reconsideration.  Tr. 60-62, 64-65.  The ALJ conducted a hearing on August 18, 2008, finding Ms. Boyd not disabled.  Tr. 11-25.  The Appeals Council denied Ms. Boyd's request for review, making the ALJ's ruling the Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ made the following findings:

> **Step one:**  Ms. Boyd had not engaged in substantial gainful activity since May 20, 2004.  Tr. 16.
>
> **Step two:**  Ms. Boyd had the following severe impairments:  history of fibromyalgia; history of attention-deficit hyperactivity disorder, inattentive type; major depressive disorder, in partial remission; anxiety disorder not otherwise specified; and pain disorder associated with both psychological factors and general medical condition.  *Id.*
>
> **Step three:**  These impairments did not meet or equal the requirements of a listed impairment.  Tr. 18.
>
> **Residual Functional Capacity:**  Ms. Boyd had the RFC to perform light work.  She can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds.  She can stand and/or walk and can sit about 6 hours in an 8 hour work day.  She should avoid concentrated exposure to hazards.  Tr. 20.
>
> Ms. Boyd had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and set realistic goals or make plans independently of others.  *Id*.
>
> **Step four:**  Ms. Boyd was unable to perform any past relevant work.  Tr. 23.
>
> **Step five:**  Ms. Boyd could perform other jobs existing in significant numbers in the national economy, and, therefore, was not disabled.  *Id.*

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

**DISCUSSION**

**A.     The ALJ's Assessment of Ms. Boyd's Credibility**

Ms. Boyd argues that the ALJ erred in rejecting her testimony. Dkt. 19 at 20. Evaluating a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996). First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-2; SSR 96-7p. Second, if the claimant meets the first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Here, Ms. Boyd alleged that she was unable to sustain basic work activities on a regular and continuing basis due to her fibromyalgia, which limited her ability to lift, walk, and stand; and her mental impairments, which affected her memory and concentration, and prevented her from completing tasks and following spoken instructions. Tr. 21, 39-47, 112-19. The ALJ found Ms. Boyd's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC finding. Tr. 21. Specifically, the ALJ found Ms. Boyd's testimony was contradicted by the evidence of (1) her wide range of activities, (2) her improvement with treatment and medication management, and (3) the minimal objective findings in the medical record. Tr. 21-22.

First, the ALJ considered Ms. Boyd's wide range of activities, noting that Ms. Boyd cared for her husband, grandchildren, and household pets; completed household chores,

including laundry, mending, vacuuming, dusting, sweeping, and scrubbing; went shopping; prepared meals; and did yard work, including weeding, trimming, digging, and raking. Tr. at 21-22, 113-16, 119, 219, 371. In her Function Report, Ms. Boyd indicated that she went out five to seven days a week, and shopped three to five times a month for up to two hours. Tr. at 22, 115. In the same function report, she stated that she and her husband attended family and friends' birthday and holiday gatherings; went to church and Bunco games once per month; and occasionally went to parties and dined out. Tr. at 22, 116. The ALJ also noted that Ms. Boyd reported that she followed written instructions well, read the newspaper, did crossword puzzles, managed her own funds, gardened, crocheted, knitted, watched television, made jewelry, and used the computer. Tr. at 22, 116-17. An ALJ is permitted to draw an adverse inference as to the plaintiff's credibility when the claimant is able to engage in household chores and daily activities inconsistent with her disabling subjective complaints. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). While it is true that plaintiff was somewhat equivocal about how much time she spent pursuing such activities, the ALJ's interpretation of her testimony was reasonable and was supported by substantial evidence. Thus, the ALJ's finding that plaintiff's wide range of activities was inconsistent with the alleged severity of her physical and mental impairments must be upheld. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ also discounted Ms. Boyd's credibility based on evidence from Kaiser Permanente that her mental impairments improved with psychotherapy and medication management. Tr. at 21. As the Commissioner points out, in January 2004, one week after her treating doctor adjusted her medication, Ms. Boyd called to report "she felt that she had already improved enough to return to work." Tr. at 159-60. In February 2004, her doctor noted that "[s]he ha[d] responded (rather quickly) to treatment and seem[ed] back to baseline." Tr. 160.

REPORT AND RECOMMENDATION - 4

By November 2004, Ms. Boyd reported that she was still having problems with energy, "but it [did not] appear that she ha[d] any other symptoms of depression other than an increase[d] 'appetite' (which [was] effecting her weight – Effexor)." *Id*. In March 2005, her doctor noted that Concerta had been beneficial for her attentional problems. Tr. 161. In May 2005, Ms. Boyd reported benefit from Adderal and benzotropine. Tr. at 162. On December 28, 2005, Ms. Boyd reported she was "doing ok" with medication. Tr. 165. The same record indicates that she was "[c]ooperative, neatly dressed and neatly groomed. No psychometer agitation or retardation, no abnormal movements. Speech normal rate and volume. . . . Affect pleasant, appropriate. No delusions or other evidence of a thought disorder. Concentration and comprehension of today's discussion seemed adequate. Judgment and insight adequate." Tr. 165. The ALJ may properly discount a claimant's credibility on the basis of medical improvement. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599-600 (9th Cir. 1999).

The ALJ also considered the minimal objective findings in the medical record in rejecting Ms. Boyd's testimony. Tr. 21-22. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed to the May 2004 psychological assessment at Kaiser Permanente by Katherine E. Hensen, who opined that Ms. Boyd did not evidence any impaired functioning in language based skills, visually based memory, or reasoning and judgments. Tr. 21, 258-66. Ms. Hensen reported a general assessment of functioning ("GAF")[2] score of 58, indicating only moderate symptoms. Tr. 21, 265. She did not assess any functional limitations.

---

[2] The GAF is a subjective determination based on a scale of 1 to 100 of the "clinician's judgment

REPORT AND RECOMMENDATION - 5

In addition, the ALJ pointed to the April 2006 psychiatric evaluation by Beal Essink, M.D. Tr. 21, 215-21. Dr. Essink's mental status examination showed no psychomotor disturbance; and Ms. Boyd's speech rate, volume, and tone were normal without pressure or latencies. Tr. 21, 219. Ms. Boyd's mood was "good" and her thought processes were goal directed. *Id.* Her thought content was current without suicidal or homicidal ideation, delusions, auditory, or visual hallucinations or obsession or compulsions. *Id.* She was able to register three of three items and could remember all three after five minutes, was oriented as to date, could remember three of the past five presidents, and could spell "world" forward and backward. *Id.* The ALJ noted that although Ms. Boyd complained of symptoms of attention-deficit hyperactivity disorder, including forgetfulness and distraction, Dr. Essink found that she had good attention and her symptoms were mild with no significant impairments during the one on one interview. Tr. 21. Dr. Essink reported a GAF score of 65,[3] indicating only mild symptoms and generally quite adequate functioning. Tr. 21, 220.

The ALJ also considered the May 2006 findings of state agency psychologist Thomas Clifford, Ph.D. Tr. 22-23. Dr. Clifford opined that Ms. Boyd's "statements of limitations were credible in that she had a mental impairment, but that impairment did not prevent her from completing simple, work related tasks." Tr. 22-23, 247. Dr. Clifford noted that the medical record showed Ms. Boyd could follow one and two step instructions; maintain attention and

---

of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000) ("DSM-IV-TR"). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34.

[3] A GAF score of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some \\meaningful interpersonal relationships." *See* DSM-IV-TR, *supra* note 2, at 34.

REPORT AND RECOMMENDATION - 6

concentration for up to two hours at a time; work with co-workers; accept direction from a supervisor; and manage the basic adaptive demands of the workplace, although she would benefit from assistance with important irrevocable decisions. *Id*. The ALJ is permitted to consider the evidence of minimal objective findings as factors in the credibility determination. *See Burch*, 400 F.3d at 680-81.

The foregoing reasons offered by the ALJ to justify his adverse credibility determination are sufficiently clear and convincing and supported by substantial evidence in the record. Although the evidence presented by the plaintiff may also admit an interpretation more favorable to her, the ALJ's interpretation was rational and therefore binding upon this Court. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

**B.     The ALJ's Consideration of Ms. Boyd's Fibromyalgia and Pain Disorder**

Ms. Boyd also argues that the ALJ erred by failing to include any functional limitations resulting from her fibromyalgia and pain disorder in the RFC assessment. Dkt. 19 at 17-18. She posits that since the ALJ determined that her fibromyalgia and pain disorder were severe at step two, these impairments by definition caused limitations that must be included in the RFC. *Id*.

A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record (including the claimant's and other's descriptions of limitations, and medical reports) to determine the claimant's ability to work on a sustained basis. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); SSR 96-8p. "[A]n RFC that fails to take into account a claimant's limitation is defective." *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, the ALJ determined that Ms. Boyd was capable of light work with the environmental and the moderate nonexertional limitations set out above. Tr. 20. With respect to Ms. Boyd's fibromyalgia and pain disorder, the ALJ found they constituted severe impairments at step two, but concluded that despite her allegations of more limiting physical and mental symptoms, the overall record did not support limitations to the extent she alleged. Tr. 20-23.

Ms. Boyd's arguments rely in significant part on her own testimony regarding her limitations. As noted above, however, substantial evidence supported the ALJ's stated reasons for rejecting Ms. Boyd's testimony that her fibromyalgia and pain disorder limited her ability to lift, walk, and stand. Tr. 21.

In addition, the medical record supports the ALJ's conclusions that plaintiff is capable of light work and can complete simple, work related tasks. Tr. 23. The ALJ correctly observed that the medical record contained no objective fibromyalgia assessment of tender points for the time period under consideration. Tr. 18. The ALJ noted that medical records from Kaiser Permanente showed a diagnosis of fibromyalgia as early as December 22, 1998, for which plaintiff was prescribed Motrin. Tr. 16, 297-98. The ALJ also noted that the diagnosis of fibromyalgia appeared throughout the treatment records from Kaiser Permanent. Tr. 16, 157-214, 253-305. Despite these notations in the medical record, no doctor identified any work related limitations associated with her fibromyalgia.

Similarly, the ALJ found Ms. Boyd's pain disorder to be severe, noting consideration of the opinion of examining psychiatrist, Beal Essink, M.D., who diagnosed chronic pain disorder associated with both psychological factors and a general medical condition. Tr. 17, 21, 23, 215-21. Notwithstanding his diagnosis, Dr. Essink found only mild symptoms and that her prognosis for significant change or improvement was good. Tr. 17, 21-23, 220.

Contrary to Ms. Boyd's contention, the ALJ's step two finding does not necessarily mean she had a significant limitation at any subsequent step. *Cf. Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (holding "the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert."). Rather, the ALJ's RFC finding properly "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" that lacked credibility. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that the ALJ was not required to consider medical conditions or impairments that the ALJ found neither credible nor supported by the record).

Ms. Boyd also suggests that the ALJ had a duty to develop the record with respect to her fibromyalgia diagnosis. She contends that because the ALJ was aware that the medical records from Kaiser Permanente only went back to 1997, the ALJ erred by failing to request the prior records which contained a 1995 diagnosis by physician's assistant Jeffrey Weih, P.A., of fibromyalgia with 16 of 18 tender points.[4]  Dkt. 19 at 19.

"[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen,* 80 F.3d at 1288. This duty exists even when, as here, the claimant is represented by counsel. *Id*. "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ can discharge his duty in several ways,

---

[4] On December 8, 2008, Ms. Boyd submitted medical records to the Appeals Council from Kaiser Permanente dated April 15, 1993 to February 18. 1995, in conjunction with her request for review of the ALJ's decision. Tr. 420-26.

REPORT AND RECOMMENDATION - 9

including subpoenaing the claimant's physicians, submitting further questions to them, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288.

Here, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Even if other records established a convincing fibromyalgia diagnosis, Ms. Boyd failed to establish any limitations resulting from fibromyalgia during the relevant time period beginning on her alleged onset date May 20, 2004. No doctor opined or even suggested that Ms. Boyd's fibromyalgia resulted in any significant limitations. Indeed, the record does not include any medical evidence suggesting that Ms. Boyd's fibromyalgia resulted in her experiencing greater limitations than those provided in the RFC. Although the Kaiser Permanent records submitted by Ms. Boyd to the Appeals Council contained a 1995 fibromyalgia diagnosis, any limitations resulting from this diagnosis would be undermined by the fact that Ms. Boyd continued to work for more than nine years until her alleged onset date on May 20, 2004. Tr. 38, 421. In addition, medical records from 1998 show that her doctor "did not put her on any work restrictions." Tr. 297. Contrary to Ms. Boyd's contention, these records suggest fibromyalgia had little impact on Ms. Boyd's ability to work.

The ALJ found the evidence adequate to make a determination regarding Ms. Boyd's disability, and this finding had support in the record. Accordingly, the ALJ did not have a duty to develop the record, and the Court finds no error in the ALJ's evaluation and assessment of Ms. Boyd's fibromyalgia and pain disorder.

### C. The ALJ's Step Five Determination

As indicated above, the ALJ found that Ms. Boyd could perform light work with certain moderate nonexertional limitations, could not return to her past relevant work, but remained able

to perform jobs characterized as "office helper," "merchandise marker," and "order checker." Tr. 23-24. Ms. Boyd claims that each of these three jobs as defined in the Dictionary of Occupational Titles ("DOT") was precluded by the ALJ's RFC assessment. Dkt. 19 at 16-17. She argues that the VE's testimony relied upon by the ALJ did not constitute substantial evidence because (1) the VE failed to properly establish any transferrable skills from her past relevant work, (2) the jobs identified by the VE were inconsistent with her limitation to simple, repetitive tasks; and (3) the ALJ erred by not relying on the VE's answer to the second hypothetical. *Id*.

Ms. Boyd's first objection does not warrant reversal. "Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled." Social Security Ruling ("SSR") 82-41.[5] Transferability is defined as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82.41. Absent transferable skills, a vocational expert cannot properly opine that a claimant could perform other work at the skilled or semi-skilled level. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224-25 (9th Cir. 2009).

Here, the VE found that Ms. Boyd could perform the requirements of a semi-skilled office helper, but made no specific findings regarding whether any skills Ms. Boyd acquired as a licensed pharmacy technician were transferable. This assumed error is of little consequence, however, because the VE misidentified the job of office helper as semi-skilled, whereas the DOT

---

[5] "[Social Security Rulings] do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 11

1  identifies it as a specific vocation preparation ("SVP") level 2, or unskilled work.[6]  Moreover,

2  the VE identified two other available jobs – merchandise marker and order checker – which are

3  also unskilled and thus do not require transferable skills from prior skilled or semiskilled work.

4  Next, Ms Boyd argues that the ALJ's limitation to "one and two step instructions

5  involving simple but not detailed tasks" is not consistent with the Reasoning Level required by

6  the jobs identified by the VE.  Dkt. 28 at 3 (citing Tr. 20, 49, 245-47).  Specifically, she contends

7  that she could not perform the job of order checker because it requires Reasoning Level 3

8  defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished

9  in written, oral, or diagrammatic form," and to "[d]eal with problems involving several concrete

10 variables in or from standardized solutions."  U.S. Dep't of Labor, *Dictionary of Occupational*

11 *Titles* 209.567-014 (4th ed. 1991)("DOT").  Ms. Boyd also contends that the jobs of office helper

12 and merchandise marker are inconsistent with her limitations because they require Reasoning

13 Level 2 defined as the ability to "[a]pply commonsense understanding to carry out detailed but

14 uninvolved written or oral instructions," and to "[d]eal with problems involving a few concrete

15 variables in or from standardized solutions."  DOT 239.567-010, 209.587-034.  The

16 Commissioner did not respond to Ms. Boyd's argument that she cannot perform the Reasoning

17 Level 2 and 3 jobs the VE identified because they are inconsistent with the ALJ's limitation to

18 simple, but not detailed, tasks.

19 Ms. Boyd's argument that jobs requiring a Reasoning Level 2 are not consistent with a

20 limitation to simple tasks lacks merit.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4p.

REPORT AND RECOMMENDATION - 12

2005) (finding Reasoning Level 2 consistent with RFC to perform simple, routine tasks); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (finding limitation to level two reasoning consistent with limitation to simple, routine tasks); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) (finding level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks); *see also Birmingham v. Astrue*, Case No. 10-5215-BHS, 2011 WL 677433 (W.D. Wash. 2011) (finding no inconsistency between the ALJ's limitation to simple, repetitive work and the DOT requirement of Level 2 reasoning).  As indicated above, Reasoning Level 2 jobs require an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and to "[d]eal with problems involving a few concrete variables in or from standardized solutions."  DOT 239.567-010, 209.587-034.  While Reasoning Level 2 requires the understanding to carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved – that is, not a high level of reasoning." *Flaherty*, 182 F. Supp 2d at 850.  "Work that requires 'commonsense understanding' is simple," and "[w]ork that requires 'uninvolved written or oral instructions' is simple and routine." *Temple v. Callahan*, 114 F.3d 1195, 1997 WL 289457, *2 (9th Cir. 1997).  Accordingly, the Court finds the VE's testimony that Ms. Boyd could perform the Reasoning Level 2 jobs was not inconsistent with the ALJ's limitation to simple tasks.

The undersigned, however, agrees with Ms. Boyd that the ALJ's limitation to simple tasks precludes her from performing the job of order checker which the DOT classified as a Reasoning Level 3 job. *See, e.g., Hackett*, 395 F.3d 1176 (finding the plaintiff's limitation to simple and routine tasks incompatible with level three reasoning).  Nevertheless, as indicated above, the VE identified two other Level 2 jobs – merchandise marker and office helper – which are not precluded by the ALJ's limitation to simple tasks.  As the ALJ need only identify *one* or

more jobs that exist in significant numbers in the national economy that Ms. Boyd could perform at step five, any error was harmless. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

Finally, Ms. Boyd asserts that the ALJ erred by not relying on the VE's answer to the second hypothetical which added the limitation that she would be absent from the workplace four to six hours a week at unpredictable times due to chronic pain and fatigue. Tr. 52-53. Ms. Boyd reiterates her arguments regarding the ALJ's consideration of her credibility and the medical evidence, which were discussed and rejected above. Dkt. 19 at 17. An ALJ may exclude restrictions in a hypothetical that are not supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001). As long as the hypothetical that the ALJ posed to the VE "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," it is proper for the ALJ to rely on the VE's answer. *See Bayliss*, 427 F.3d at 1217-18. As discussed above, the ALJ properly assessed Ms. Boyd's credibility and the medical evidence. Therefore, the ALJ appropriately provided a hypothetical to the VE and relied on the VE's testimony regarding Ms. Boyd's ability to perform the requirements of merchandise marker and office helper. The ALJ's finding that Ms. Boyd could perform jobs existing in significant numbers in the national economy was based on substantial evidence and should be upheld.

**D.     New Medical Evidence**

Ms. Boyd argues that additional evidence submitted to the Appeals Council, but not reviewed by the ALJ, supports a finding that she had more serious functional limitations than the

ALJ found. Dkt. 19 at 21-23. Specifically, she argues that a 1995 diagnosis of fibromyalgia with 16 of 18 tender points by physician's assistant, Jeffrey Weih, P.A.; a December 9, 2008, declaration from her husband, Bob Boyd; and a February 23, 2009, psychological evaluation by Leslie Carter, Ph.D., based on her examination of Ms. Boyd in January 2009; support a finding that she was disabled as a result of her physical and mental impairments. *Id*.

It is clear that the ALJ did not err in failing to consider this evidence, as it was not before him when he issued his decision. This additional evidence was submitted by Ms. Boyd to the Appeals Council following the ALJ's decision in October 2008. Tr. 14-25, 427-61. After reviewing the additional evidence, the Appeals Council concluded that it did not provide a basis for reversing the ALJ's decision. Tr. 1-4. Nevertheless, plaintiff wants the Court to consider it now in determining whether to reverse the ALJ's decision, and whether such reversal should be for an outright award of benefits or for further administrative proceedings. *See* Dkt. 19 at 23.

In *Mayes v. Massanari*, 276 F.3d 453, 461-63 (9th Cir. 2001), the Court applied the standard set forth in 42 U.S.C. § 405(g) to determine whether to remand that case in light of additional evidence submitted to the Appeals Council. Under that standard, to justify remand, the claimant must show that the additional evidence is both "new" and "material" to determining disability, and that he or she "had good cause for having failed to produce that evidence earlier." *Id*. at 462.

To be material, under 42 U.S.C. § 405(g), "the new evidence must bear 'directly and substantially on the matter in dispute.'" *Mayes*, 276 F.3d at 463. In addition, the claimant must demonstrate a "reasonable possibility" that the new evidence "would have changed the outcome of the administrative hearing." *Id*. To demonstrate "good cause," the claimant must show that the new evidence "was unavailable earlier." *Id*. The good cause requirement will not be met by

REPORT AND RECOMMENDATION - 15

"merely obtaining a more favorable report once his or her claim has been denied." *Id*.

Here, the 1995 fibromyalgia diagnosis by Mr. Weih, the 2008 declaration from Mr. Boyd, and the 2009 psychological evaluation by Dr. Carter, are already part of the administrative record. They were considered by the Appeals Council and made part of the record when plaintiff sought review. Tr. 1-2. This action by the Appeals Council makes this evidence part of the record before this Court. *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). Thus, this Court will consider the entire record, including new evidence submitted for the first time to the Appeals Council, in determining whether the ALJ's decision was supported by substantial evidence.

First, Ms. Boyd has not shown a reasonable possibility that the 1995 fibromyalgia diagnosis would have changed the outcome of the administrative hearing. As indicated above, even if other records established a convincing fibromyalgia diagnosis, Ms. Boyd failed to establish any limitations resulting from fibromyalgia during the relevant time period beginning on her alleged onset date in May 2004. No doctor opined or even suggested that Ms. Boyd's fibromyalgia resulted in any significant limitations. Indeed, the record does not include any medical evidence suggesting that Ms. Boyd's fibromyalgia resulted in her experiencing greater limitations than those provided in the RFC. Although the Kaiser Permanent records submitted by Ms. Boyd to the Appeals Council contained a 1995 fibromyalgia diagnosis, any limitations resulting from this diagnosis would be undermined by the fact that she continued to work for more than nine years until her alleged onset date on May 20, 2004. Tr. 38, 421. In addition, medical records from 1998 show that her doctor "did not put her on any work restrictions." Tr. 297. Accordingly, Ms. Boyd has not shown the new evidence was material to determining her disability, and remand is not required.

Second, Dr. Carter's February 2009 psychological evaluation did not provide any new medical evidence. Rather, Dr. Carter's evaluation simply attempted to rebut the ALJ's decision. Tr. 427-43. As Ms. Boyd states, Dr. Carter performed "a longitudinal review of all of the evidence of record and found that Plaintiff met Listings 12.04 and 12.06, and that Plaintiff's functional limitations were far more limiting than those found by Dr. Clifford and Dr. Essink." Dkt. 28 at 12. A psychological evaluation from a doctor that does not provide any new medical evidence does not justify a remand. Indeed, to conclude otherwise would undercut the finality in the appeals process by permitting every plaintiff to obtain a remand by getting a physician to submit an opinion disputing the findings of the ALJ and submitting it to the Appeals Council. Moreover, to hold otherwise would undercut the principle that it is the ALJ, and not the doctor, who is the ultimate arbiter on the issue of disability. Accordingly, the Court declines to adopt such an approach.

Finally, Ms. Boyd proffered a declaration from her husband which stated that she has been unable to work since she stopped working at Wal-Mart in 2004. Tr. 154-56. Ms. Boyd offered no reason why her husband's declaration was not submitted before the ALJ's hearing and has therefore failed to show good cause for failing to bring forth this evidence earlier. *See Mayes*, 276 F.3d at 463 (denying a claimant's request to submit new evidence when the claimant failed to explain why the new evidence could not have been submitted to the ALJ). Moreover, there is no reasonable possibility that the declaration would have changed the outcome because it was largely cumulative of Ms. Boyd's testimony, which was found to be not credible. Accordingly, remand to consider this new evidence is unnecessary.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be

1  **AFFIRMED** and the case be **DISMISSED** with prejudice.  A proposed order accompanies this

2  Report and Recommendation.

3  Any objections to this Recommendation must be filed and served upon all parties no later

4  than **June 6, 2011.**  If no objections are filed, the matter will be ready for the Court's

5  consideration on that date.  If objections are filed, any response is due within 14 days after being

6  served with the objections.  A party filing an objection must note the matter for the Court's

7  consideration 14 days from the date the objection is filed and served.  The matter will then be

8  ready for the Court's consideration on the date the response is due.  Objections and responses

9  shall not exceed twelve pages.  The failure to timely object may affect your right to appeal.

10  DATED this 23rd day of May, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18